United States District Court
Southern District of Texas
**ENTERED**
September 21, 2021
Nathan Ochsner, Clerk

UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  TEXAS
MCALLEN  DIVISION

| | | |
|---|---|---|
| VISION  IMPORT  GROUP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL  ACTION  NO.  7:21-cv-00295 |
| THE FRESH GROUP, LTD. d/b/a Maglio | § | |
| McAllen, | § | |
| | § | |
| Defendant. | § | |

## OPINION  AND  ORDER

The  Court  now  considers  "Defendant's  Motion  to  Dismiss  Plaintiff's  First  Amended  Complaint,  or  in  the  Alternative,  Stay  or  Abstain  from  this  Matter,"[1]  Defendant's  declaration  in  support,[2]  Plaintiff's  response,[3]  and  Defendant's  reply.  After  considering  the  motion,  record,  and  relevant  authorities,  the  Court  **GRANTS**  Defendant's  motion  and  **DISMISSES**  Plaintiff's  complaint.

### I.  BACKGROUND AND PROCEDURAL  HISTORY

Plaintiff  Vision  Import  Group,  LLC  commenced  this  case  on  August  4,  2021,[4]  then  filed  its  live  first  amended  complaint[5]  and  exhibits[6]  on  August  5th.  Plaintiff  alleges  that  it  and  Defendant  The  Fresh  Group,  Ltd.  d/b/a  Maglio  McAllen  entered  an  agreement  on  December  15, 2020,  which  provided  for  Plaintiff  to  supply  Persian  limes  to  Defendant  for  specified  prices.[7]  On  May  26,  2021,

---

[1] Dkt. No. 11.
[2] Dkt. No. 12.
[3] Dkt. No. 19.
[4] Dkt. No. 1.
[5] Dkt. No. 5.
[6] Dkt. No. 7.
[7] Dkt. No. 5 at 3, ¶ 8; *see* Dkt. No. 7 at 2, ¶¶ 1–2.

Defendant allegedly demanded over $300,000 in damages from Plaintiff because Defendant was forced to purchase limes from third parties as a result of Plaintiff's failure to deliver.[8] However, Plaintiff points out that "a confluence of weather and natural disaster related events" resulted in a significant shortage and significant price increase in Persian limes, and that the parties' agreement includes an excuse of performance provision for force majeure events.[9] Plaintiff brings a claim for declaratory judgment under 28 U.S.C. § 2201 seeking a declaration that Plaintiff's performance under the parties' limes sales agreement is excused between March 20, 2021, and May 21, 2021.[10] Plaintiff additionally claims entitlement to attorney fees.[11]

Also on May 26, 2021, "Defendant instituted an informal proceeding with the United States Department of Agriculture" (USDA) alleging that Plaintiff failed to perform under the parties' December 15th limes sales agreement.[12] On August 3, 2021, the USDA "entered a non-binding informal decision"[13] which held that the parties' force majeure excuse provision did not protect Plaintiff because it failed to "reference to a designated parcel of land."[14] Plaintiff filed its original complaint in this Court the following day.[15] Defendant commenced the USDA's formal complaint process on August 12th,[16] and that case appears to be proceeding.[17]

---

[8] Dkt. No. 5 at 5, ¶ 15. *But see* Dkt. No. 12-4 at 4, ¶ 10 (citing $297,324 in cover damages).

[9] Dkt. No. 5 at 3–4, ¶¶ 10–12.

[10] *Id*. at 5, ¶ 19.

[11] *Id*. at 7, ¶ 27.

[12] *Id*. at 2 n.1; *see* Dkt. No. 19-4 at 4–5.

[13] Dkt. No. 5 at 6 n.6.

[14] Dkt. No. 19-5 at 2 (citing *DiMare Fresh, Inc. v. Sun Pac. Mktg. Coop., Inc.*, 67 Agric. Dec. A, at *8 (U.S.D.A. 2008) (published in 75 Agric. Dec.)).

[15] Dkt. No. 1.

[16] Dkt. No. 12 at 3, ¶ 12.

[17] *See* Dkt. No. 22 at 1, ¶ 1.1 ("[The] reparation proceeding before the USDA is proceeding rapidly . . . .").

After Plaintiff served its first amended complaint on Defendant on August 6, 2021,[18] Defendant filed the instant motion to dismiss on August 25th.[19] Plaintiff timely[20] responded,[21] and Defendant's motion is ripe for consideration. However, the Court briefly notes as a threshold matter that Plaintiff's brief lacks numbered paragraphs, hindering the Court's reference to Plaintiff's arguments. The Court cautions Plaintiff that future submissions should consistently number each paragraph to properly comply with the Federal Rules of Civil Procedure.[22]

The Court now turns to the analysis of Defendant's motion to dismiss.

## II. DISCUSSION

### a. Jurisdiction and Venue

Plaintiff asserts that this Court has diversity jurisdiction over this case.[23] "The party seeking to invoke federal diversity jurisdiction bears the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000."[24] With respect to Plaintiff's citizenship, "[a] party seeking to establish diversity jurisdiction must specifically allege the citizenship of every member of every LLC or partnership involved in a litigation."[25] Plaintiff asserts that its only two members are residents of New Jersey and Florida respectively.[26]

---

[18] Dkt. No. 9.

[19] Dkt. No. 11.

[20] *See* LR7.4.A (providing a deadline of 21 days).

[21] Dkt. No. 19.

[22] FED. R. CIV. P. 7(b)(2) ("The rules governing captions and other matters of form in pleadings apply to motions and other papers."); FED. R. CIV. P. 10(b) (emphasis added) ("A party must state its claims or defenses *in numbered paragraphs*, each limited as far as practicable to a single set of circumstances.").

[23] Dkt. No. 5 at 2, ¶ 4.

[24] *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).

[25] *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017); *see Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (holding that a litigant seeking to invoke diversity jurisdiction must allege "the citizenship of all of [limited liability company] members"); *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397 (5th Cir. 2009) (affirming a district court's finding that it had diversity jurisdiction when the district court "trac[ed] [the parties'] citizenships down the various organizational layers where necessary"); *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990) ("[W]e reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members.").

[26] Dkt. No. 10 at 1, ¶¶ 1–3.

Furthermore, Plaintiff alleges that Defendant "is a corporation organized and existing under the laws of the Wisconsin" with its principal place of business in Wisconsin.[27] A corporation is a citizen of the state where it is incorporated and where its principal place of business is located.[28] Accordingly, the Court holds that complete diversity is satisfied.[29] Furthermore, in a declaratory judgment action, "the amount in controversy is measured by the value of the object of the litigation."[30] Because the object of this litigation is a dispute over Defendant's "cover damages in the amount of $302,598" for the limes,[31] the threshold amount of $75,000 is met for diversity jurisdiction under 28 U.S.C. § 1332(a).

Plaintiff alleges that this Court has personal jurisdiction over Defendant.[32] "A federal district court hearing a case in diversity may exercise personal jurisdiction to the extent permitted for a court under applicable law of the state in which the federal court sits."[33] This means that a federal court "may only exercise jurisdiction if: '(1) the state's long-arm statute applies, as interpreted by the state's courts, and (2) if due process is satisfied under the 14th Amendment to the federal Constitution.'"[34] Because this Court sits in Texas, the Court turns to Texas's long-arm jurisdictional statute,[35] which "extend[s] the personal jurisdiction of Texas court [sic] to the extent allowed by the Due Process Clause of the Fourteenth Amendment."[36] Accordingly, under the Due Process Clause, the Court may exercise personal jurisdiction over an out-of-state defendant when

---

[27] Dkt. No. 5 at 1, ¶ 2.
[28] *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (citing 28 U.S.C. § 1332(c)(1)).
[29] *See Corfield v. Dall. Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) ("A district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants.").
[30] *Frye v. Anadarko Petrol. Corp.*, 953 F.3d 285, 293 (5th Cir. 2019) (quoting *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013)).
[31] Dkt. No. 19-4 at 5. *But see supra* note 8.
[32] Dkt. No. 5 at 2, ¶ 6.
[33] *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005).
[34] *Paz v. Brush Eng'd Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (quoting *Allred v. Moore & Peterson*, 117 F.3d 278 (5th Cir. 1997)).
[35] *See generally* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2021).
[36] *Fielding*, 415 F.3d at 424.

that defendant has purposefully directed its activities at the residents of the forum, the litigation arises out of or relates to the defendant's activities directed at the forum, and the suit does not offend traditional notions of fair play and substantial justice.[37]   Plaintiff asserts that these requisites are met because: (1) the contract at issue references Defendant's address in Texas, (2) the contract at issue references a Texas location with respect to price, and (3) there is a choice-of-law provision selecting Texas as the governing law.[38]   Although Defendant discusses jurisdiction, Defendant does not argue that this Court lacks personal jurisdiction.[39]   Because the parties' contract references Texas as the forum and choice of law jurisdiction, place of business and delivery, and address of Defendant, the Court agrees with Plaintiff that the elements of personal jurisdiction are met because Defendant has directed its activities at Texas and this litigation arises out of those activities.   The Court holds that it has specific personal jurisdiction which does not offend traditional notions of fair play and substantial justice over Defendant in this case.[40]

Last, Plaintiff argues that venue is proper in this Court "because a substantial part of the events giving rise to Plaintiffs' claim occurred in the McAllen division of the Southern District of Texas."[41]   However, this case actually involves omissions (Plaintiff's failure to deliver the limes) that evidently arose out of Mexico from where the Persian limes are sourced.[42]   Accordingly, the Court finds that venue is proper in this Court not under 28 U.S.C. § 1391(b)(2) which Plaintiff references, but rather under §§ 1391(b)(1) and 1391(c)(2) because Defendant is deemed under those subsections to reside in McAllen, Texas and venue is proper in the judicial district in which

---

[37] *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992).
[38] Dkt. No. 5 at 2, ¶ 6.
[39] Dkt. No. 11 at 4, ¶ 2.1.
[40] *See Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008).
[41] Dkt. No. 5 at 2, ¶ 5.
[42] *See* Dkt. No. 5 at 3, ¶ 10.

Defendant resides. The Court therefore holds that jurisdiction and venue are properly vested in this Court.

### b.  Legal Standards for the Motion to Dismiss

"A motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts."[43] Under Federal Rule of Civil Procedure 12(b)(6), to avoid dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[44] In evaluating a motion to dismiss, courts first disregard any conclusory allegations or legal conclusions[45] as not entitled to the assumption of truth,[46] and then undertake the "context-specific" task, drawing on judicial experience and common sense, of determining whether the remaining well-pled allegations give rise to entitlement to relief.[47] Naked assertions devoid of factual enhancement, formulaic recitations of the elements of a cause of action, threadbare conclusory statements, and allegations that "do not permit the court to infer more than the mere possibility of misconduct" will not suffice.[48] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[43] *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995) (quotation omitted); *see Chatham Condo. Ass'ns v. Century Vill., Inc.*, 597 F.2d 1002, 1011 (5th Cir. 1979) (alteration in original) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)) ("The decision disposing [of] the case is then purely on the legal sufficiency of plaintiff's case: even were plaintiff to prove all its allegations, he or she would be unable to prevail.").
[44] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[45] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quotation omitted) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").
[46] *Mustapha v. HSBC Bank USA, NA*, No. 4:11-CV-0428, 2011 WL 5509464, at *2 (S.D. Tex. Nov. 10, 2011) (Hanks, J.) ("[A] court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").
[47] *Iqbal*, 556 U.S. at 678–79; *see Fernandez-Montez v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").
[48] *Iqbal*, 556 U.S. at 678–79.

alleged."[49]  The Court reads the complaint as a whole[50] and accepts all well-pleaded facts as true (even if doubtful or suspect[51]) and views those facts in the light most favorable to the plaintiff (because a Rule 12(b)(6) motion is viewed with disfavor[52]), but will not strain to find inferences favorable to the plaintiff,[53] but also will not indulge competing reasonable inferences that favor the Defendant.[54]  Courts have "jettisoned the [earlier] minimum notice pleading requirement"[55] and the complaint must plead facts that "nudge" the claims "across the line from conceivable to plausible"[56] because discovery after permitting a complaint to survive a motion to dismiss is not a license to fish for a colorable claim.[57]  The complaint must allege more than facts merely consistent with a defendant's liability;[58] the complaint must plead every material point necessary to sustain recovery and dismissal is proper if the complaint lacks a requisite allegation.[59]  However, the standard is only "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."[60]  A plaintiff need not plead

---

[49] *Id.*; *see In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quotation omitted) (holding that the "standard simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements").

[50] *See Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 506 (5th Cir. 2011) ("While the allegations in this complaint that the Golf Association's anticompetitive acts 'substantially affected interstate commerce' are not sufficient on their own, the complaint here read as a whole goes beyond the allegations rejected in *Twombly* and *Iqbal*.").

[51] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

[52] *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Turner v. Pleasant,* 663 F.3d 770, 775 (5th Cir. 2011) ("This court construes facts in the light most favorable to the nonmoving party, 'as a motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted.'")).

[53] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

[54] *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009).

[55] *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009).

[56] *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Twombly*, 550 U.S. at 570).

[57] *Barnes v. Tumlinson*, 597 F. App'x 798, 799 (5th Cir. 2015) (citing *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978)); *see Iqbal*, 556 U.S. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

[58] *Covington v. City of Madisonville*, 812 F. App'x 219, 223 (5th Cir. 2020) (per curiam) (quoting *Iqbal*, 556 U.S. at 678).

[59] *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006); *accord Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

[60] *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010))

evidence[61] or even detailed factual allegations, especially when certain information is peculiarly within the defendant's possession.[62] The Court is to give a liberal construction to the pleadings and disentitle plaintiffs from offering evidence to clarify and support their theories of liability only if there is no basis for liability.[63]

The Court is limited to assessing only the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which the Court may take judicial notice.[64] Attachments to the complaint become part of the pleadings for all purposes,[65] but the Court is not required to accept any characterization of them because the exhibit controls over contradictory assertions,[66] except in the case of affidavits.[67] Because the focus is on the pleadings, "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56,"[68] but not if the material to be considered is a matter of public record[69] or a website[70] and not

---

[61] *Copeland v. State Farm Ins. Co.*, 657 F. App'x 237, 241 (5th Cir. 2016).

[62] *See Innova Hosp. San Antonio, LP v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (holding that pleading "on information and belief" is acceptable when the inference of culpability is plausible).

[63] *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312–13 (5th Cir. 2002); *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam) (citation omitted) ("The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint.").

[64] *Innova Hosp. San Antonio, LP v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018).

[65] *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citing FED. R. CIV. P. 10(c)).

[66] *Kamps v. Baylor Univ.*, 592 F. App'x 282, 284 n.1 (5th Cir. 2014) (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004)).

[67] *Bosarge v. Miss. Bureau of Narc.*, 796 F.3d 435, 440–41 (5th Cir. 2015) ("[W]hile the affidavits may be considered as an aid to evaluating the pleadings, they should not control to the extent that they conflict with [plaintiff's] allegations.").

[68] FED. R. CIV. P. 12(d).

[69] *Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 178 n.2 (5th Cir. 2012) (per curiam) (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)).

[70] *Hyder v. Quarterman*, No. CIV.A. C-07-291, 2007 WL 4300446, at *3 (S.D. Tex. Oct. 10, 2007) (Owsley, J.) (citing *Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) & *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam)).

if a defendant attaches documents to a motion to dismiss that are "referred to in the plaintiff's complaint and are central to her claim."[71]

### c. Analysis

Notwithstanding the foregoing analysis in Section II.a, Defendant's motion to dismiss requests the Court decline jurisdiction or alternatively abate this action until the USDA resolves this case.[72] Plaintiff responds that the primary issue in this case is actually governed by Texas contract law, and that the Court need not and should not defer to the USDA to resolve this issue in the first instance.[73]

### 1. Declaratory Judgment Jurisdiction

The parties disagree about whether the Court should exercise or decline to exercise its jurisdiction in this declaratory judgment action. Under the declaratory judgment statute, the Court "*may* declare the rights and other legal relations of any interested party seeking such declaration."[74] Federal district courts are "under no compulsion" to exercise their jurisdiction in a declaratory judgment action, even when such jurisdiction exists.[75] This Court has "unique and substantial discretion in deciding whether to declare the rights of litigants."[76] Nevertheless, the Court "may not dismiss declaratory judgment actions 'on the basis of whim or personal disinclination.'"[77] In exercising its discretion, the Court "must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action."[78] Plaintiff, as the party invoking the Court's

---

[71] *Causey v. Sewell Cadillac–Chevrolet*, 394 F.3d 285, 288 (5th Cir. 2004).

[72] Dkt. No. 11 at 3, ¶ 1.6.

[73] Dkt. No. 19 at 1–2.

[74] 28 U.S.C. § 2201(a) (emphasis added).

[75] *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942).

[76] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

[77] *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994) (quoting *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993)).

[78] *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2003).

declaratory judgment jurisdiction, bears the burden of establishing that the Court should exercise its jurisdiction to decide this matter.[79] The parties disagree about the application of the elements, to which the Court now turns.

### i. Justiciability

Defendant first argues that this "case is not justiciable because its resolution would not completely resolve the claims between the parties" and because Plaintiff is merely using this action to obtain an advance ruling on Plaintiff's affirmative defense for its benefit in the parallel USDA action.[80] Plaintiff argues that this case is justiciable because there is a live contract dispute and that Plaintiff, rather than seeking to obtain a backdoor advantage in the USDA action, is actually seeking a full adjudication on the merits.[81] The Court agrees with Plaintiff. With respect to Defendant's first point, a declaratory judgment action is justiciable when there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[82] The Court holds that Plaintiff's claim that it properly invoked the force-majeure clause to excuse its performance for its failure to ship limes, in the face of Defendant's claim that Plaintiff breached the parties' agreement,[83] is a substantial legal controversy of sufficient immediacy to warrant resolution. Indeed, this is precisely the immediate legal issue that Defendant seeks resolution of in the USDA proceeding.[84] With respect to Defendant's second point, although Defendant is correct that Plaintiff may not use a declaratory judgment action simply to obtain an advance ruling on an affirmative defense for Plaintiff's benefit

---

[79] *Total Gas & Power N. Am. v. FERC*, No. 4:16-cv-1250, 2016 WL 3855865, at *7 & n.53, 2016 U.S. Dist. LEXIS 92036, at *23 & n.53 (S.D. Tex. July 15, 2016) (Atlas, J.) (citing *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993)).
[80] Dkt. No. 11 at 5, ¶ 3.2.
[81] Dkt. No. 19 at 11–12.
[82] *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation omitted).
[83] *See* Dkt. No. 5 at 4–5, ¶¶ 14–15.
[84] *See* Dkt. No. 12-1 at 3, ¶¶ 7–9.

in another case,[85] the Court holds that Plaintiff is seeking to "resolve the entire case or controversy" as to the parties' contract dispute, rather than merely seeking a determination on a "collateral legal issue."[86] If Plaintiff is correct that its performance is excused under the parties' contract's force-majeure clause, that issue resolves Plaintiff's liability.[87]

### ii. Authority

The parties only breezily address the issue of the Court's authority to grant declaratory relief.[88] Whether the Court has authority to grant declaratory relief sometimes depends on a prior state court action,[89] but the Court has authority to determine declaratory relief when diversity jurisdiction is present and there is no pending state court action.[90] Because diversity jurisdiction is present[91] and because there is no indication of a pending state court action, the Court holds that it has the authority to grant declaratory relief in this action.

### iii. Discretion

The parties hotly dispute the third element, whether the Court should decide to exercise its jurisdiction over this declaratory judgment action. The Fifth Circuit has:

> identified seven nonexclusive factors for a district court to consider in deciding whether to decide or dismiss a declaratory action. These factors are:
> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
> (5) whether the federal court is a convenient forum for the parties and witnesses;

---

[85] See Total Gas & Power N. Am. v. FERC, No. 4:16-cv-1250, 2016 WL 3855865, at *8 & n.60 (S.D. Tex. July 15, 2016) (Atlas, J.) (quoting Calderon v. Ashmus, 523 U.S. 740, 747 (1998)).

[86] Calderon, 523 U.S. at 747.

[87] See Dkt. No. 7 at 3, § 5 ([Plaintiff] will not be liable to [Defendant] for any . . . causes outside of [Plaintiff's] control.").

[88] See Dkt. No. 11 at 5, ¶¶ 3.2–3.3; Dkt. No. 19 at 10–11.

[89] See Aggreko, LLC v. Am. Home Assur. Co., No. 14-cv-1215, 2014 WL 6901376, at *3 (E.D. La. Dec. 5, 2014).

[90] See Sherwin-Williams Co. v. Holmes County, 343 F.3d 383, 387–88 (5th Cir. 2003).

[91] See supra text accompanying notes 23–31.

(6) whether retaining the lawsuit would serve the purposes of judicial economy; and

(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.[92]

The Court will assess each of these factors, called the *Trejo* factors, in turn.

The first factor contemplates a *state* action, but the United States Supreme Court has expressly considered the possibility that there may be "cases raising issues of federal law or cases in which there are no parallel state proceedings" in which a district court may decline to exercise declaratory judgment jurisdiction.[93] At least two district judges have held that the first *Trejo* factor may weigh against the district court's exercise of declaratory judgment jurisdiction "out of deference to an administrative proceeding created by Congress, even in the absence of any federal-state conflict."[94] These holdings are consistent with at least two admonishments by the Supreme Court.[95] Importantly, upon an appeal of one of those district court's holdings, the Fifth Circuit affirmed the district court's abstention from deciding the declaratory judgment claim because, among other things, a pre-existing administrative framework designed to remediate the controversy weighed in favor of declining declaratory judgment jurisdiction.[96] Accordingly, the Court holds that the first *Trejo* factor encompasses a pending federal administrative action, and

---

[92] *Sherwin-Williams Co.*, 343 F.3d at 388 (citing *St. Paul Ins. Co. v. Trejo,* 39 F.3d 585 (5th Cir. 1994)).

[93] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 290 (1995).

[94] *Gonzalez v. Manjarrez*, No. EP-11-CV-29-KC, 2013 WL 152177, at *13 (W.D. Tex. Jan. 4, 2013) (quotation omitted); *see Pension Benefit Guar. Corp. v. Cafeteria Operators, L.P.*, No. CIV.A. 3:03-CV-2173, 2004 WL 1800850, at *4 n.7 (N.D. Tex. Aug. 12, 2004).

[95] *See Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 246–47 (1952) ("Even when there is no incipient federal-state conflict, the declaratory judgment procedure will not be used to preempt and prejudice issues that are committed for initial decision to an administrative body . . . . Responsibility for effective functioning of the administrative process can not be thus transferred from the bodies in which Congress has placed it to the courts."); *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 242 (1980) (citation omitted) ("[T]he effect of the judicial review sought by [respondent] is likely to be interference with the proper functioning of the agency and a burden for the courts. Judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise. Intervention also leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary.").

[96] *Gonzalez v. Manjarrez*, 558 F. App'x 350, 354–55 (5th Cir. 2014) (per curiam).

that the formal USDA action, which Defendant commenced on August 12, 2021,[97] and which may resolve all the matters in controversy in this action,[98] weighs strongly against the Court deciding Plaintiff's declaratory judgment claim at this stage, as opposed to on appeal from the USDA's resulting decision under 7 U.S.C. § 499g(c).[99]

The Court rejects Plaintiff's argument that the first *Trejo* factor does not weigh against retaining declaratory judgment jurisdiction. Plaintiff insists that the "lynchpin" of its dispute with Defendant "centers on Texas contract law" that the USDA does not have the expertise to resolve.[100] One of Plaintiff's Members avers that he "has no confidence that the USDA will properly consider Texas contract law and the enforceability of the force majeure provision in the Sales Agreement."[101] But Plaintiff conflates the *correctness* of the USDA's decision, which a district court may rectify if it is incorrect upon an appropriate appeal,[102] with the *presence* of a parallel proceeding "in which all of the matters in controversy may be fully litigated."[103] Although the Court questions the USDA's informal decision in which the agency determined that Plaintiff could not avail of the parties' contractual force-majeure provision because the clause did not reference a designated parcel of land,[104] the USDA has ample opportunity in its formal process[105] to "correct its own mistakes [if any were committed] and to apply its expertise" to resolving the parties' dispute.[106]

---

[97] Dkt. No. 12 at 3, ¶ 12.
[98] *Cf.* Dkt. No. 19-5.
[99] *See infra* note 126.
[100] Dkt. No. 19 at 13.
[101] Dkt. No. 19-1 at 6, ¶ 21; *accord* Dkt. No. 19 at 4.
[102] *See* 7 U.S.C. § 499g(c).
[103] *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 388 (5th Cir. 2003).
[104] *Compare* Dkt. No. 19-5 at 2, *with* Tex. Bus. & Com. Code Ann. § 2.615(1) & cmt. 9 (West 2021), *and* Dkt. No. 7-2 at 3, ¶ 5.
[105] *See* 7 C.F.R. §§ 47.6–47.25 (2021).
[106] *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 242 (1980).

The second *Trejo* factor concerns whether this suit was filed in anticipation of another. This factor weighs against this Court retaining jurisdiction, indeed, there can be no serious dispute about this conclusion. Plaintiff avers that, "[*a*]*s a result*" of its dissatisfaction with the USDA's informal decision-making process, Plaintiff filed its original complaint.[107] Plaintiff filed its original complaint one day after the USDA's informal decision,[108] eight days before Defendant initiated the formal USDA complaint process,[109] and even expressly argued in its original complaint that the Court should not decline jurisdiction in favor of the USDA's process.[110] Plaintiff objects that it is not engaged in "procedural fencing."[111] "Often, courts find that anticipatory suits weigh in favor of dismissal when the declaratory judgment plaintiff engaged in 'procedural fencing'" such as attempting to force a favorable choice of law in Texas federal court via a declaratory judgment rather than via an unfavorable decision in California state court.[112] But the Court holds that Plaintiff *is* attempting to force a decision on its force-majeure defense that would likely have a procedural fencing effect on (if not wholly precluding) the USDA proceeding. That is Plaintiff's *raison d'être* for this suit. Plaintiff further argues that it "is attempting to streamline" the proceedings by skipping over the USDA's formal decision and proceeding straight to federal court because the applicable law, the Perishable Agricultural Commodities Act (PACA) and Texas contract law, remains the same.[113] In so arguing, Plaintiff is not making the point Plaintiff thinks it is making. Instead, Plaintiff is reinforcing that this suit was filed in anticipation of Defendant initiating the formal complaint procedure with the USDA.

---

[107] Dkt. No. 19-1 at 6, ¶ 21 (emphasis added).
[108] Dkt. No. 11 at 9, ¶ 3.11.
[109] Dkt. No. 12 at 3, ¶ 12.
[110] Dkt. No. 1 at 2 n.1.
[111] Dkt. No. 19 at 14.
[112] *Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 167 (5th Cir. 2015) (per curiam) (quoting *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 397 n.7 (5th Cir. 2003)).
[113] Dkt. No. 19 at 14–15.

The third *Trejo* factor concerns forum shopping. Plaintiff disingenuously argues that it is not forum shopping because "[t]here is no evidence that [Plaintiff] brought this action in search of more favorable law."[114] However, Plaintiff simultaneously argues that the USDA's

> informal opinion does not cite any Texas law, and misconstrues the sole case it does cite. [Plaintiff] has no confidence that the USDA will properly consider Texas contract law and the enforceability of the force majeure provision in the Sales Agreement based upon the USDA Informal Opinion. As a result, [Plaintiff] filed its Original Complaint in this case . . . .[115]

The Court need go no further than Plaintiff's own statements to hold that Plaintiff was seeking more favorable law, or a more favorable application of law, by attempting to have its declaratory judgment action determined by this Court.[116]

The fourth *Trejo* factor concerns possible inequities, but is intertwined with the foregoing considerations of anticipatory suits and forum shopping.[117] Accordingly, the Court's holding does not differ: this factor weighs in favor of abstention because Plaintiff's suit is in anticipation of and is an attempt to circumvent the USDA forum and the USDA's formal decision.

The fifth *Trejo* factor concerns the convenience of this forum.

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.[118]

---

[114] *Id.* at 16.

[115] *Id.* at 4.

[116] The Court agrees with Defendant that Plaintiff's suit attempts to avoid the USDA forum. *See* Dkt. No. 11 at 9–10 ("Had [Plaintiff] not sought to avoid the USDA, it would have simply waited for [Defendant] to commence its formal reparation proceeding before the USDA . . . .").

[117] *See Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983); *Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 168 (5th Cir. 2015) (per curiam) ("Like the two [factors] before it, this factor goes to fairness.").

[118] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), *quoted in Mission Ins. Co.*, 706 F.2d at 602–03.

Defendant is headquartered in Wisconsin "and most of the relevant witnesses and documentation are located in Wisconsin."[119] Plaintiff "is in New Jersey."[120] However, both parties appear to have resources such as offices and warehouses in Texas and the parties' contract selects Texas as the choice of law jurisdiction and directs delivery to be effected in Texas.[121] Although Defendant asserts that "disputes before the USDA are nearly always less costly to litigate than disputes in the district court,"[122] Plaintiff argues that having its claims determined in this Court will reduce the expense of appeals and a potential de novo trial in this Court.[123] Although somewhat equivocal, the Court holds that the fifth *Trejo* factor weighs in Plaintiff's favor because the witnesses to the delivery vel non of the limes and the witnesses to the alleged "massive shortage of supply of Persian limes . . . caused by the once in a century cold weather combined with rain in Mexico (also experienced in Texas)" are more likely to be in the Southern District of Texas than in Wisconsin or New Jersey.[124]

The sixth *Trejo* factor concerns judicial economy. Plaintiff repeats its arguments that judicial economy is better served by circumventing the USDA rather than appealing its decision in a de novo proceeding.[125] Defendant argues that declaratory relief "should not be granted where a special statutory proceeding has been provided."[126] Defendant's argument, however, conflates the sixth *Trejo* factor with the first.[127] Nonetheless, the Court holds that *judicial* economy is better

---

[119] Dkt. No. 11 at 11, ¶ 3.15.
[120] Dkt. No. 19 at 18.
[121] *Id.* at 17–18.
[122] Dkt. No. 11 at 3, ¶ 1.5.
[123] Dkt. No. 19 at 18.
[124] Dkt. No. 5 at 3, ¶ 10.
[125] Dkt. No. 19 at 18.
[126] *Katzenbach v. McClung*, 379 U.S. 294, 296 (1964) (citing FED. R. CIV. P. 57 advisory committee's note to 1937 adoption), *quoted in* Dkt. No. 11 at 12, ¶ 3.16; *cf. Macauley v. Waterman S.S. Corp.*, 327 U.S. 540, 545 n.4 (1946) (holding that the district court was correct to decline declaratory judgment jurisdiction when an administrative agency was charged by statute with making an initial determination).
[127] *See supra* text accompanying note 99.

served by abstaining jurisdiction, permitting the parties and USDA to crystallize the issues,[128] and for the USDA to issue a formal reparation decision which serves as "prima-facie evidence of the facts therein stated."[129] Although the *parties'* economy may be better served by not undergoing a de novo appeal of the USDA's order, the Court holds that judicial economy is likely to be aided by the USDA's order either because it finally resolves the parties' dispute or because it assists the Court in interpreting the facts, issues, and relevant authorities if appealed.

The seventh *Trejo* factor concerns review of state decisions. The seventh factor is simply not implicated here[130] and weighs in favor of neither party.

Given the foregoing analysis, and the great weight of the *Trejo* factors that counsel against the Court retaining jurisdiction of Plaintiff's declaratory judgment claim, the Court is inclined to dismiss this case, but the parties make additional arguments regarding this Court's declaratory judgment jurisdiction. In the interest of justice and completeness, the Court will consider the arguments regarding primary jurisdiction.

### 2. *Primary Jurisdiction*

The parties disagree over whether the USDA has primary jurisdiction over their dispute. Defendant asserts that Congress placed this matter within the jurisdiction and expertise of the USDA,[131] but Plaintiff disagrees.[132] Primary jurisdiction is an administrative law doctrine that:

> applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.[133]

---

[128] *See* 7 U.S.C. § 499f (providing for complaints and investigations).
[129] 7 U.S.C. § 499g(c).
[130] *See* Dkt. No. 11 at 12, ¶ 3.17 (citing, *inter alia*, *Gonzalez v. Manjarrez*, No. EP-11-CV-29-KC, 2013 WL 152177, at *16 (W.D. Tex. Jan. 4, 2013)).
[131] *Id.* at 15, ¶ 3.22.
[132] *See* Dkt. No. 19 at 7.
[133] *United States v. W. Pac. R.R.*, 352 U.S. 59, 64 (1956).

"Despite the term primary *jurisdiction*, the reference of a case to an agency pursuant to that doctrine, rather than denying the jurisdiction of the court over the case, presupposes that jurisdiction."[134]   The doctrine is merely one of "judicial abstention whereby a court which has jurisdiction over a matter, nonetheless defers to an administrative agency for an *initial decision* on questions of fact or law within the peculiar competence of the agency."[135]  Primary jurisdiction may therefore be considered to be a doctrine of primary expertise. Primary jurisdiction is "a flexible doctrine to be applied at the discretion of the district court."[136]

"No fixed formula exists for applying the doctrine of primary jurisdiction,"[137] but the Fifth Circuit holds that district courts should balance the benefits of obtaining the agency's aid with the need to resolve the litigation expeditiously by considering various factors including "how agency action will aid the litigation; whether the litigation involves conduct requiring continuing supervision by the agency; whether the issues to be litigated are unique to regulated industries; and whether proceedings already are pending before the agency."[138]  "Application of the doctrine [of primary jurisdiction] is particularly appropriate where uniformity of certain types of administrative decisions is desirable, or where there is a need for the 'expert and specialized knowledge of the

---

[134] *Ill. Bell Tel. Co. v. Glob. NAPs Ill., Inc.*, 551 F.3d 587, 595 (7th Cir. 2008), *quoted in Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 809 (5th Cir. 2011).

[135] *REO Indus., Inc. v. Nat. Gas Pipeline Co. of Am.*, 932 F.2d 447, 456 (5th Cir. 1991); *see Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatl.*, 400 U.S. 62, 68 (1970) ("When there is a basis for judicial action, independent of agency proceedings, courts may route the threshold decision as to certain issues to the agency charged as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved.").

[136] *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir. 1988).

[137] *W. Pac. R.R.*, 352 U.S. at 64 (1956).

[138] *Gulf States Utils. Co. v. Ala. Power Co.*, 824 F.2d 1465, 1473 (5th Cir. 1987) (citing *Miss. Power & Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 419–20 (5th Cir. 1976)); *cf. Maritrend, Inc. v. Galveston Wharves*, 152 F.R.D. 543, 554 (S.D. Tex. 1993) (Stacy, M.J.) (quoting *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)) ("[F]our factors must be present for a court to invoke the doctrine of primary jurisdiction: '(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.'").

agencies.'"[139]  Importantly, "[t]he advisability of invoking primary jurisdiction is greatest when the issue is already before the agency" and when "[d]evelopment of the factual context by those expert in the area" would aid the Court.[140]  Reasons weighing against finding primary jurisdiction in an administrative agency include:  (1) when the case involves an uncomplicated issue that does not have wider ramifications;[141]  (2) when a federal statute entrusts the issue to federal district courts in the first instance,[142] and (3) when a federal court's resolution of the issue is not likely to disrupt an ongoing technical difficulty that Congress entrusted the agency with regulating.[143]

Two federal district courts, in California and Michigan, have held that "garden variety contract/PACA case[s]" do not implicate technical issues or vest primary jurisdiction in the USDA.[144]  This Court agrees.  This case is garden variety; it involves only a contractual failure to deliver produce, a contractual excuse, and a run-of-the-mill PACA claim for the nondelivery of limes.[145]  "The duty to pay for produce arises under the law of contract and Uniform Commercial Code, neither of which has been displaced by PACA."[146]  PACA itself provides that it does not "abrogate nor nullify any other statute, whether State or Federal, dealing with the same subjects of this chapter; but it is intended that all such statutes shall remain in full force and effect except insofar only as they are inconsistent herewith or repugnant hereto."[147]  PACA is not "intended to repeal the law of sales or to destroy the rights and liabilities of the contracting parties

---

[139] *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 919 (5th Cir. 1983) (quoting *W. Pac. R.R.*, 352 U.S. at 64).

[140] *Miss. Power & Light Co.*, 532 F.2d at 420.

[141] E.g., a complex issue bearing on national energy policy would weigh in favor of primary jurisdiction in the former Federal Power Commission or the present Federal Energy Regulatory Commission.

[142] E.g., the issue involves federal contract litigation ordinarily vested in district courts under 28 U.S.C. § 1332.

[143] *See Miss. Power & Light Co.*, 532 F.2d at 420–21.

[144] *Sun Pac. Mktg. Coop., Inc. v. DiMare Fresh, Inc.*, No. CIV-F-06-1404 AWI, 2007 WL 1174651, at *4 (E.D. Cal. Apr. 19, 2007), *cited in Great Lakes Produce, LLC v. Bailey*, No. 1:08-CV-463, 2008 WL 4534116, at *4 (W.D. Mich. Sept. 29, 2008).

[145] *See* Dkt. No. 19 at 7; Dkt. No. 12-1 at 4, ¶¶ 11–12; Dkt. No. 22 at 2, ¶ 2.3 ("[M]any reparation actions arising under PACA are, at their heart, contractual disputes.").

[146] *Great Lakes Produce, LLC*, 2008 WL 4534116, at *3.

[147] 7 U.S.C. § 499o.

thereunder."[148]  PACA further provides that PACA claims may be enforced *either* through the USDA or in any court of competent jurisdiction, and that PACA "shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of [the PACA] chapter are *in addition* to such remedies."[149]  Therefore, Defendant's argument that the USDA has comprehensive "authority over the wholesale produce industry" and implication that such administrative authority should evoke the Court's deference under the doctrine of primary jurisdiction[150] is inconsistent with PACA's text and spirit. Defendant's argument that Congress has "specifically delegated to the Secretary the authority to decide issues relating to violations of PACA upon the filing of a complaint by one produce merchant against another in a reparation proceeding"[151] is an incomplete thought, because Congress has also vested this Court with "federal diversity contract litigation" jurisdiction even when it involves an issue also regulated by an administrative agency.[152]  As Defendant admits in its reply, "many reparation actions arising under PACA are, at their heart, contractual disputes" that rely on common legal issues like the Uniform Commercial Code,[153] and as Chief Judge Brown warned, the Court should not "run from every difficult decision [or decision that involves technical issues] on the comfortable assurance that someone else can take a stab at it first."[154]

In directly applying the factors of primary jurisdiction, the Court holds that they weigh slightly in favor of Plaintiff's proposition that the Court should retain jurisdiction. To be sure, the critical issues of whether the parties' dispute is already before the USDA and whether the Court

---

[148] *Ernest E. Fadler Co. v. Hesser*, 166 F.2d 904, 906 (10th Cir. 1948) (citing *LeRoy Dyal Co. v. Allen*, 161 F.2d 152, 157 (4th Cir. 1947)).
[149] 7 U.S.C. § 499e(b) (emphasis added).
[150] Dkt. No. 11 at 15, ¶ 3.23.
[151] *Id.* ¶ 3.22.
[152] *Miss. Power & Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 420 (5th Cir. 1976).
[153] Dkt. No. 22 at 2, ¶ 2.3.
[154] *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224, 241 (5th Cir. 1976) (Brown, C.J., concurring).

would benefit from the USDA's expertise and factual development of a produce industry issue both weigh in favor of holding that primary jurisdiction vests in the USDA and counsel dismissal of this case. However, all other factors counsel against holding that primary jurisdiction is in the USDA. This litigation, involving an ordinary PACA and contract interpretation dispute, does not implicate difficult technical issues, is not dissimilar from typical federal diversity cases that come before this Court, and it is difficult to see how a decision on Plaintiff's force majeure claim could disrupt some complex national policy or supervisory scheme involving agriculture entrusted to the USDA.[155] This case is, at its core, a contract dispute historically entrusted to the courts.[156] Importantly, then-Judge Brown stressed the Supreme Court's admonishment that the doctrine of primary jurisdiction turns on "the expert and specialized knowledge of the agencies involved."[157] Reasons to defer to an administrative agency's primary jurisdiction are at their zenith when "preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies . . . are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure."[158] In short, as the Fifth Circuit has recognized,[159] finding primary jurisdiction in an administrative agency often rests on some specific reasons to defer to the agency's administrative expertise, and those reasons are not present in this case. While there is no need to defer to specialized technical knowledge, the *Trejo* factors nonetheless counsel dismissal of this claim.

---

[155] *See supra* note 143.

[156] *See* Dkt. No. 22 at 3, ¶ 2.3 (citing *Rothenberg v. H. Rothstein & Sons*, 183 F.2d 524, 526 (3d Cir. 1950) (arguing that the USDA, like this Court, will look to applicable state law to interpret a force-majeure clause).

[157] *Shaw Warehouse Co. v. S. Ry. Co.*, 294 F.2d 850, 859 (5th Cir. 1961) (Brown, J., dissenting) (quoting *United States v. W. Pac. R.R.*, 352 U.S. 59, 64 (1956)).

[158] *W. Pac. R.R.*, 352 U.S. at 64–65 (quoting *Far E. Conf. v. United States*, 342 U.S. 570, 574–75 (1952)).

[159] *See supra* note 139.

### III. CONCLUSION AND HOLDING

The Court holds that, although some factors favor finding primary jurisdiction in the United States Department of Agriculture and dismissing this declaratory judgment action in favor of the already commenced agency proceeding, on balance, the USDA does not have primary jurisdiction over the parties' instant dispute arising from Plaintiff's failure to deliver limes to Defendant. Nonetheless, for the foregoing reasons, the Court holds that it will not exercise its declaratory judgment jurisdiction to ascertain the rights and liabilities of the parties. The Court holds that, although Plaintiff's complaint seeking declaratory relief is presently justiciable and the Court has the authority to decide the issue, the Court should decline to exercise its declaratory judgment jurisdiction because the first, second, third, fourth, and sixth *Trejo* factors weigh in favor of abstaining jurisdiction. Only the fifth *Trejo* factor weighs in Plaintiff's favor.

In summary, Plaintiff failed to deliver limes to Defendant pursuant to its contract and Defendant invoked the informal USDA resolution process in May 2021.[160] Plaintiff participated and submitted its arguments to the USDA.[161] In August 2021, the USDA rendered an initial and informal decision adverse to Plaintiff.[162] Unhappy with this decision, Plaintiff sought refuge under the declaratory judgment shelter. This is an improper use of the declaratory judgment mechanism. Plaintiff may not short-circuit an agency proceeding in which it was participating but losing to punt the matter to a potentially more favorable forum.[163] If Plaintiff desired that a dispute between the parties could only be heard by a Texas federal or state court, "it should have bargained for that term in the parties' contract."[164] Accordingly, the Court **GRANTS** Defendant's motion to

---

[160] Dkt. No. 11 at 2, ¶ 1.3.
[161] *Id.*
[162] Dkt. No. 5 at 6 n.6.
[163] *See* Dkt. No. 22 at 1, ¶ 1.1 ("Plaintiff Vision Import Group, LLC ('Vision') filed this action in an improper attempt to wrest jurisdiction from the primary forum selected by [Defendant] . . . .").
[164] Dkt. No. 22 at 5–6, ¶ 2.9.

dismiss[165] and **DISMISSES** Plaintiff's complaint and claims in their entirety. This case will terminate upon entry of the Court's final judgment.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 21st day of September 2021.

_____
Micaela Alvarez
United States District Judge

---

[165] Dkt. No. 11.